IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 12, 2019

## STATE OF TENNESSEE v. BRANDON OTIS JOHNSON

**Appeal from the Criminal Court for Davidson County**
**No. 2015-D-2395     Cheryl A. Blackburn, Judge**

_____

### No. M2018-01051-CCA-R3-CD

_____

Defendant, Brandon Otis Johnson, appeals from the trial court's revocation of his probation. Defendant argues that the trial court improperly relied on hearsay evidence without making the required findings of reliability and good cause justifying its admission over his objections. After a full review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

J. Michael Engle (on appeal) and David Von Wiegandt (at hearing), Nashville, Tennessee, for the appellant, Brandon Otis Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Doug Thurman and Jeff George, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

In October of 2015, Defendant was indicted for possession with intent to sell or deliver .5 grams or more of cocaine in Count One, possession with intent to sell or deliver an imitation controlled substance in Count Two, possession with intent to sell or deliver hydrocodone in Count Three, possession with intent to sell or deliver more than one-half

ounce but less than ten pounds of marijuana in Count Four, and possession with intent to use drug paraphernalia in Count Five. On November 3, 2016, Defendant pled guilty to Counts One and Three with concurrent sentences of eight years and four years, respectively, in exchange for the dismissal of the remaining counts of the indictment. Defendant's sentence was suspended to supervised probation.

On December 1, 2017, a violation of probation warrant was filed alleging that Defendant failed to provide proof of employment, tested positive for various drugs, was "behind" on his court costs and probation fees of $5,886.50, and had completed only two out of 384 hours of community service work. A second violation of probation warrant was filed on February 16, 2018, alleging that Defendant had been arrested on subsequent charges including "attempted felony murder," was in possession of a firearm, and had engaged in assaultive behavior. A hearing was held on May 16, 2018.

At the beginning of the hearing, defense counsel stated that Defendant would be conceding that he had tested positive for drugs and that he had only completed two hours of community service work. The State entered as an exhibit a drug test report, which indicated that on November 21, 2017, Defendant tested positive for methamphetamine, hydrocodone, morphine, oxycodone, oxymorphone, and marijuana.

With regard to Defendant's subsequent charges, there was some discussion regarding the fact that they had been dismissed in General Sessions Court without a preliminary hearing but had been presented to the grand jury and were currently pending in another division of the Davidson County Criminal Court. The State then called Detective Benjamin Fisher with the Youth Service Division of the Metro Nashville Police Department to testify. Detective Fisher testified that he responded to a call involving a shooting of a three-year-old victim on December 14, 2017. Detective Fisher was informed by officers on the scene that the victim was being treated at Vanderbilt Children's Hospital. The victim appeared to have a graze wound to his lower calf. Detective Fisher noted that there were several other children inside the residence at the time of the shooting. A projectile was recovered from inside a mattress. Detective Fisher testified that Defendant's name was given to him by the victim's mother, who used to be in a relationship with Defendant, as well as by two other witnesses.

The State paused Detective Fisher's testimony and called Sergeant Andrew Grega to testify. Sergeant Grega testified that he also responded to the scene of the December 14 shooting. Sergeant Grega spoke to the victim's grandparents. The victim's grandmother called Defendant, and Sergeant Grega spoke to Defendant over speaker phone. Defendant stated that he and the victim's mother have a daughter together. Defendant picked his daughter up from school and took her out for her birthday without telling the mother. When Defendant brought his daughter back, the mother's new boyfriend confronted him at the door. When Sergeant Grega asked Defendant about the

shooting, Defendant knew what he was talking about. Defendant stated that he knew what he did was wrong and that he did not mean for the child to get hurt. Defendant stated that he had a revolver in his jacket pocket, that the mother's new boyfriend also had a firearm, and that Defendant fired his gun in self-defense. Defendant told Sergeant Grega that he threw the gun out of the window of the car he was driving, a white Impala. Sergeant Grega attempted to arrange a meeting with Defendant because Defendant wanted to "tell his side of the story." However, Defendant never came in because he was not "mentally ready to be booked."

Sergeant Grega testified that the incident occurred on Metropolitan Development and Housing Authority property and that there were surveillance cameras throughout the housing development. One of the cameras depicted the front of the residence where the shooting occurred, and Sergeant Grega was able to retrieve a video recording of the incident. Sergeant Grega stated that he could see "muzzle flashes" in the video.

On cross-examination, Sergeant Grega admitted that he had never previously met or spoken with Defendant. Sergeant Grega did not record the phone call with Defendant.

At the beginning of the hearing, there had been some discussion about the technical difficulties in playing the video recording of the incident. After Sergeant Grega's testimony, the trial court stated that it did not need to see the video "for the purpose of this probation violation." As the State prepared to recall Detective Fisher to complete his testimony, which had been paused in an effort to get the video working, the prosecutor asked if the trial court would "be interested in him testifying about what's depicted on the video[.]" The trial court responded, "I mean I really, from, just so you know, this is a probation violation. He's conceded to two, and then I just heard a third one and that is possessing of a firearm."

Detective Fisher testified that he arrested Defendant for attempted murder. Detective Fisher spoke to Defendant after providing *Miranda* warnings. When asked about the shooting incident, Defendant stated that he was with his daughter before invoking his right to counsel. The State then informed the trial court that it was able to play the video recording. As the video was played,[1] Detective Fisher testified that it was a fair and accurate depiction of the residence where the incident occurred. Detective Fisher testified that the video depicted an adult male and a juvenile female exiting a white car and that even though the video was blurry, the juvenile female appeared to be about the same height as Defendant's daughter. Detective Fisher testified that the video showed that Defendant and his daughter approached the residence, the daughter went inside, and then an adult male, who Detective Fisher identified as Tony DeBerry, appeared at the front door. Detective Fisher testified that it appeared as if Defendant and

---

[1] The video recording was not included in the record on appeal.

Mr. DeBerry "were exchanging words." Detective Fisher testified that as Mr. DeBerry attempted to close the door, Defendant stepped back and lifted his shirt, "and you can see a flash that goes inside the residence." From his experience as a police officer, Detective Fisher identified the flash as "a muzzle flash from a firearm." The video then showed Defendant fleeing from the scene towards his vehicle, and Detective Fisher testified that he could see "something shiny in his right hand."

On cross-examination, Detective Fisher agreed that "the video is not the best." Detective Fisher also agreed that the only way he was able to identify Defendant in the video was from what he was told by "[p]eople that have direct knowledge of him, being family members" and "[p]eople directly involved in the incident."

After hearing argument from the parties, the trial court made the following oral ruling:

> This is, again, a probation hearing. I signed a warrant for [Defendant], before this incident even occurred, on December the 1st, 2017[,] for his alleged violation based on a positive drug test where he has six different substances in his body according to the results. He hadn't provided sufficient information. Well, he had conceded to that, as well as conceded to the fact he hadn't done public service work. And then I can take notice of the fact that I signed the warrant on December the 1st, it wasn't served on him until after he was arrested on this charge, and I signed another one afterwards. So there also is a period of time he had not been reporting. And then not only do I hear that he is at least on the telephone and said he, what was a self-defense, but he had a gun; and then I see a video which would show. And the [D]efendant, under Miranda, said that he was taking his daughter home. We see a video of what was described as him and then there's that[] flash. So, even by circumstantial evidence, I can determine that he had a gun, which is a complete violation.

> So we've got four violations of my probation, irrespective of what happened there at that house. So I'm going to put his sentence into effect. He'll be transferred to the Department of Corrections.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by revoking his probation based on inadmissible hearsay. While conceding that "the strict rules of evidence do not apply," Defendant argues that the trial court made no findings that the

- 4 -

hearsay evidence was reliable or that there was good cause to deny his right to confront and cross-examine the witnesses against him despite his numerous objections. Defendant argues that there was no "substantial competent and admissible evidence by real live witnesses with first-hand knowledge of the disputed facts" to support the conclusion that a violation of the conditions of probation had occurred. The State responds that Defendant "appears to ignore his concession on the violations [regarding the drug test and community service] as a basis for the revocation." The State argues that given Defendant's concession, "his challenge to the admission of proof regarding his new charges is irrelevant." We agree with the State.

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1). After revoking a defendant's probation, the trial court is authorized to order a defendant to serve the balance of his original sentence in confinement, return a defendant to probation with modified conditions as necessary, or extend the period of probation by no more than two years. T.C.A. §§ 40-35-308, -310. The revocation of probation rests in the sound discretion of the trial court and will not be overturned by this Court absent an abuse of that discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *see also State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013) (holding that an abuse of discretion standard with a presumption of reasonableness applies to all sentencing decisions). An abuse of discretion occurs when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).

"[A] a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation." *State v. John Edward Winn, Jr.*, No. M2009-00094-CCA-R3-CD, 2010 WL 2516855, at *2 (Tenn. Crim. App. June 22, 2010) (citing *State v. Harkins*, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)), *no perm. app. filed*. Instead, "the State must show by a preponderance of the evidence that the defendant violated the law." *Id.* at *3 (citation omitted). To do this, the State must "produce evidence in the usual form of testimony in order to establish the probationer's commission of another offense while on probation." *Id*. at *2 (internal quotation and citation omitted). Such evidence may include hearsay when there has been "a showing that the information contained in the report or testimony is reliable" and the trial court has made "a specific finding . . . of 'good cause' that would justify the denial of the defendant's right to confront and cross-examine an adverse witness[.]" *Id.* (citing *State v. Wade*, 863 S.W.2d 406, 409 (Tenn. 1993)). This Court has previously held that a trial court may not revoke probation based solely upon an officer's testimony regarding statements made by a victim without making the required findings of reliability and good cause. *State v. Eric Washington*, No. W2016-00669-CCA-R3-CD, 2017 WL 3895153, at *3 (Tenn. Crim. App. Sept. 5, 2017),

*no perm. app. filed*. This included the officer's testimony regarding admissions made by a voice on speaker phone when "he did not know [the d]efendant's voice and the only reason he could identify the person speaking is by what [the victim] stated." *Id*.

However, "[a d]efendant's admission that he violated the terms of his probation, alone, constitutes substantial evidence to support the revocation of probation." *State v. Ross Pruitt*, No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at *4 (Tenn. Crim. App. June 8, 2016) (citing *State v. Christopher Nathaniel Richardson*, No. M2006-01060-CCA-R3-CD, 2007 WL 776876, at *4 (Tenn. Crim. App. Mar. 15, 2007), *no perm. app. filed*), *no perm. app. filed*; *see State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). Thus, the State is correct that Defendant's concession that he tested positive for a plethora of drugs and completed only a small fraction of his required community service hours was sufficient to support the trial court's revocation of his probation. Because "[o]nly one basis for revocation is necessary," any error by the trial court in relying upon hearsay evidence regarding the shooting incident and Defendant's possession of a firearm would not be fatal to its decision to revoke his probation. *See State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App. Oct. 5, 2001), *no perm. app. filed*. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE